**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:15-cv-23294-KMW**

BERNARD BEBER and DIANE BEBER
on behalf of themselves and
all others similarly situated,

      Plaintiffs,

v.

BRANCH BANKING & TRUST CO. and
AMERICAN SECURITY INSURANCE
COMPANY,

      Defendants.

---

**MOTION OF AMERICAN SECURITY INSURANCE COMPANY
TO DISMISS THE CLASS ACTION COMPLAINT WITH PREJUDICE
WITH SUPPORTING MEMORANDUM OF LAW**

---

FRANK BURT (Fla. Bar No. 197963)
Email:  fburt@cfjblaw.com
FARROKH JHABVALA (Fla. Bar No. 765155)
Email:  fjhabvala@cfjblaw.com
LANDON K. CLAYMAN (Fla. Bar No. 283576)
Email:  lclayman@cfjblaw.com
CARLTON FIELDS JORDEN BURT, P.A.
100 S.E. Second Street
Miami Tower, Suite 4200
Miami, Florida  33131-2113
Telephone:  (305) 530-0050
Facsimile:   (305) 530-0055

*Attorneys for AMERICAN SECURITY INSURANCE
COMPANY*

Pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., Defendant American Security Insurance Company ("ASIC") submits this motion to dismiss all claims asserted against it in the Class Action Complaint ("Complaint") with prejudice.

## INTRODUCTION

Plaintiffs sue ASIC alleging that ASIC participated in a "force-placed insurance scheme" whose purpose was to "manipulate" the lender-placed insurance market and "artificially inflate" premiums by agreeing with Branch Banking & Trust Co. ("BB&T") to pay "illegal kickbacks disguised as 'expense reimbursements' or 'commissions[.]'" Compl. ¶¶ 2-3, 22. Lender-placed insurance ("LPI") is insurance which a lender or loan servicer purchases pursuant to the terms of a mortgage to provide continuous coverage on property serving as collateral for a loan when the borrower fails to maintain acceptable coverage. The lender or loan servicer (in this case, BB&T) obtains the coverage from an insurer (here, ASIC), and then attempts to recover the cost of the LPI from the borrower.

Plaintiffs' "excess" premium claims against ASIC are barred because the premiums ASIC charged were the exact amounts authorized by the Florida insurance regulators. All of plaintiffs' "excess" premium claims are barred by the filed-rate doctrine, which precludes plaintiffs from complaining that the premiums were "excessive" when they are based upon rates approved under law. *See Hill v. Bellsouth Telecomms., Inc.*, 364 F.3d 1308, 1315 (11th Cir. 2004) (once approved, the filed rate "become[s] the law and exclusively govern[s] the rights and liabilities" of the parties). Plaintiffs suffered no legally cognizable injury by paying the filed rate, and lack standing to sue ASIC. *Morales v. Attorneys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418, 1426 (S.D. Fla. 1997) (citing *Taffet v. S. Co.*, 967 F.2d 1483, 1494 (11th Cir. 1992)).

Plaintiffs' "excess" premium claims against ASIC are also barred by their failure to exhaust administrative remedies under Florida law, which governs their LPI premiums and

claims.  Fla. Stat. § 627.371; *Asseff v. Citizens Prop. Ins.*, 159 So. 3d 327, 332-33 (Fla. 1st DCA 2015); *Serchay v. State Farm Fla. Ins. Co.*, 25 So. 3d 652, 653-54 (Fla. 4th DCA 2010).  All of plaintiffs' claims against ASIC also are precluded under the controlling authority of *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1110-11 (11th Cir. 2014).  Lastly, all claims asserted against ASIC fail as a matter of law because they have been improperly pled.

**ARGUMENT**

**I.     THE FILED-RATE DOCTRINE BARS ALL OF PLAINTIFFS' CLAIMS, AND STANDING AND SUBJECT MATTER JURISDICTION ARE LACKING**

"Where the legislature has conferred power upon an administrative agency to determine the reasonableness of a rate, the rate-payer 'can claim no rate as a legal right that is other than the filed rate....'" *Taffet*, 967 F.2d at 1494 (quoting *Montana-Dakota Utils. Co. v. Nw. Public Serv. Co.*, 341 U.S. 246, 251 (1951)). The doctrine bars all claims which would effectively result in a rate lower than the filed rate, because the filed rate alone governs the relationship between the parties.  *Fla. Mun. Power Agency v. Fla. Power & Light Co.*, 64 F.3d 614, 615 (11th Cir. 1995); *Taffet*, 967 F.2d at 1488. Simply stated, a filed rate approved by the governing regulatory agency "is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 261 (2d Cir. 2015) (quoting *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994)). The doctrine bars contract, fraud, and other claims. *Wegoland*, 27 F.3d at 20; *Decambaliza v. QBE Holdings, Inc.*, 2013 WL 5777294, at *6-7 (W.D. Wis. Oct. 25, 2013).

The doctrine is grounded on two rationales: first, that courts should not "undermine[ ] agency rate-making authority by upsetting approved rates (the principle of 'nonjusticiability'); and, second, that litigation should not become a means for certain ratepayers to obtain preferential rates (the principle of 'nondiscrimination')." *Rothstein*, 794 F.3d at 261 (internal quotation marks and citations omitted). The "nonjusticiability" principle "preserve[s] the

regulating agency's authority to determine the reasonableness of rates." *H.J., Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485, 488 (8th Cir. 1992). The "nondiscrimination" principle "insure[s] that the regulated entities charge only those rates that the agency has approved or been made aware of as the law may require." *Id.*; *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998).

The filed-rate doctrine "is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue." *Marcus*, 138 F.3d at 59. "This doctrine therefore precludes claims for damages where a court would be required to substitute 'its judgment as to reasonable rates for that of an agency with specialized knowledge of the area.'" *In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 850 (N.D. Ohio 2010) (citation omitted). It is not plaintiff's legal theory or "the underlying conduct ... [that] control[s] whether the filed rate doctrine applies. Rather, the focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations." *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 890 (10th Cir. 2011) (internal quotation marks and citation omitted) (emphasis added); *H.J., Inc.*, 954 F.2d at 489; *Marcus*, 138 F.3d at 59.

The filed-rate doctrine specifically applies to claims that insurance premiums were excessive. *See, e.g., Uniforce Temp. Pers., Inc. v. Nat'l Council on Compensation Ins., Inc.*, 892 F. Supp. 1503, 1512 (S.D. Fla. 1995), *aff'd*, 87 F.3d 1296 (11th Cir. 1996); *Morales*, 983 F. Supp. at 1426. Moreover, a plaintiff suffers "no legally cognizable injury by virtue of paying the filed rate." *Taffet*, 967 F.2d at 1494. Absent a legally cognizable injury, a plaintiff lacks standing. *Morales*, 983 F. Supp. at 1429 (concluding the claims at issue are "barred by the filed

rate doctrine and its fountainhead, the doctrine of standing").[1]

In addition to *Rothstein*, in which the Second Circuit ordered dismissal of all LPI claims based on the filed-rate doctrine, *see* 794 F.3d at 258, 261-266, a number of district courts also have dismissed LPI claims based on the filed-rate doctrine.  *See e.g., Johnson v. Green Tree Servicing* LLC, 2015 WL 2452680, at *2 (N.D. Miss. May 22, 2015); *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 553-54 (S.D.N.Y. 2014); *Curtis v. Cenlar FSB*, 2013 WL 5995582, at *3-4 (S.D.N.Y. Nov. 12, 2013); *DeCambaliza v. QBE Holdings, Inc.*, 2013 WL 5777294, at *6-7 (W.D. Wis. Oct. 25, 2013); *Singleton v. Wells Fargo Bank, N.A.*, 2013 WL 5423917, at *2-3 (N.D. Miss. Sept. 26, 2013); *Roberts v. Wells Fargo Bank, N.A.*, 2013 WL 1233268, at *13 & n.9 (S.D. Ga. Mar. 27, 2013); *Stevens v. Union Planters Corp.*, 2000 WL 33128256, at *3 (E.D. Pa. Aug. 22, 2000).  *See also Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913, at *12 (S.D. Fla. Jan. 10, 2013) (explaining in LPI case that filed rate doctrine "must be addressed").

## A.     Florida Comprehensively Regulates Rates For The Insurance At Issue And Prohibits Excessive Rates

Florida "heavily regulates" the insurance industry. *Gilchrist v. State Farm Mut. Auto. Ins. Co.*, 390 F.3d 1327, 1334 (11th Cir. 2004); *Woodham v. Williams*, 207 So. 2d 320, 322 (Fla. 1st DCA 1968); Fla. Stat. § 624.01 (Florida Insurance Code comprises Chapters 624-632, 634-636, 641-642, and 651).  The Florida Insurance Code specifically regulates premium rates for the LPI insurance at issue, and "promote[s] the public welfare by regulating insurance rates … to the end that they shall not be excessive …."  Fla. Stat. §§ 627.031(1)(a), 627.062; *see generally* Fla. Stat.

---

[1] "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), which defines this Court's subject-matter jurisdiction.  Standing must be established "as a threshold matter" before any consideration of the merits.  *TSG Water Res., Inc. v. D'Alba & Donovan Certified Pub. Accountants, P.C.*, 260 F. App'x 191, 195 (11th Cir. 2007) (citation omitted).

Ch. 627, Pt. I. Insurers "must" file "cop[ies] of rates … and changes thereto" with the OIR. Fla. Stat. § 627.062(2)(a).

Florida's OIR is required to determine if a rate is "excessive," and the OIR's review must consider 15 factors, including: "Past and prospective loss experience within and without [Florida]," "[p]ast and prospective expenses," "[t]he degree of competition among insurers for the risk insured," the "[i]nvestment income reasonably expected by the insurer" from investable premiums anticipated by the rate filing, "[t]he reasonableness of the judgment reflected in the filing," "[t]he adequacy of loss reserves," "[t]he cost of reinsurance," "[p]rojected hurricane losses," "[a] reasonable margin for underwriting profit …," and "[o]ther relevant factors …." Fla. Stat. § 627.062(2)(b)1-15; *see also* § 627.062(2)(c) and (d) (providing additional factors applicable to fire insurance rates and to conflagration or catastrophe hazards).

Among other considerations, "[r]ates shall be deemed excessive if they are likely to produce a profit from Florida business which is unreasonably high in relation to the risk involved in the class of business or if expenses are unreasonably high in relation to services rendered." *Id.* § 627.062(2)(e)1. With regard to property insurance, including the LPI at issue here, the OIR "may not directly or indirectly … [p]rohibit any insurer … from paying acquisition costs [i.e., commissions] … or prohibit any such insurer from including the full amount of the acquisition costs in a rate filing." *Id.* § 627.062(2)(i)1. The OIR also enforces the Insurance Code. In sum, "[t]he insurance industry is heavily regulated in Florida and its pricing is carefully governed by the DOI." *Gibbs Props. Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 438 (M.D. Fla. 2000).

Florida also expressly prohibits insurers from charging any amount for insurance in excess of that prescribed by the approved rate. Florida Statute § 626.9541(1)(o)2, titled "*Illegal dealings in premiums; excess or reduced charges for insurance*," prohibits:

> Knowingly collecting as a premium or charge for insurance any sum in excess of
> … the premium or charge applicable to such insurance, in accordance with the

applicable classifications and rates as filed with and approved by the office, and as specified in the policy ….

Fla. Stat. § 626.9541(1)(o)2.

**B.      ASIC's Charges for Plaintiffs' Lender-Placed Insurance Were The Exact Amounts Authorized By Filed Premium Rates**

ASIC has filed and approved premium rates for the LPI policies it issued to plaintiffs. *See* Declaration of Rebecca H. Voyles ("Voyles Dec.") (attached here as Exhibit 1), ¶¶ 4-5 & Ex. A thereto. Moreover, the premiums charged for the ASIC LPI policies placed on plaintiffs' property were exactly the amounts obtained by applying the filed rates to plaintiffs' coverage amounts. *See* Declaration of Ronald K. Wilson ("Wilson Dec.") (attached here as Exhibit 2), ¶¶ 11-20.[2]

**C.      The Filed-Rate Doctrine Bars Plaintiffs' "Inflated" Premium Claims Against ASIC**

Plaintiffs' claims against ASIC are premised on allegations that the premiums ASIC charged were excessive because they allegedly included the cost of commissions ("kickbacks," in plaintiffs' parlance) and other services. *See, e.g.*, Compl. ¶¶ 2, 7, 22, 27-30, 33, 35, 38, 46, 77-80, 88, 96, 102-04, 106. Claims that insurance premiums based on filed rates are "inflated" or "excessive" are the classic claims barred by the filed-rate doctrine. *See, e.g., Morales*, 983 F. Supp. at 1426 (quoting *Taffet*, 967 F.2d at 1490); *Uniforce*, 892 F. Supp. at 1512. "The doctrine

_____

[2] This Court may consider the Voyles and Wilson Declarations because: (1) the filed rate doctrine goes to the issue of plaintiffs' standing, *see Morales*, 983 F. Supp. at 1429, and this Court may consider these Declarations as part of its subject-matter jurisdiction analysis, *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) ("matters outside the pleadings, such as testimony and affidavits, are considered" on motions challenging subject-matter jurisdiction) (quotation marks and citation omitted); (2) ASIC's rate filings are part of the public record filed with governmental agencies and this Court may take notice of them, *Chinn v. PNC Bank, N.A.*, 451 F. App'x 859, 860 n.1 (11th Cir. 2012); *Armour v. Transamerica Life Ins. Co.*, 2012 WL 234032, *5 (D. Kan. Jan. 25, 2012) (taking judicial notice of rate filing with the department of insurance); and (3) ASIC's rate filings are central to the allegations and claims asserted in the Complaint, *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

6

applies whenever a claim for damages would be 'measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue.'" *Uniforce*, 892 F. Supp. at 1512 (citation omitted).

In *Rothstein*, "[p]laintiffs allege[d] that they were fraudulently overbilled because the rates they were charged [for lender-placed insurance] did not reflect secret 'rebates' and 'kickbacks' that GMAC [the lender/servicer] received from Balboa [the lender-placed insurer]." 794 F.3d at 258. Balboa moved to dismiss under the filed rate doctrine, but the district court denied the motion "reasoning that although Balboa received regulatory approval for the LPI rates it charged to GMAC, that approval did not necessarily extend to the borrowers' reimbursement to GMAC." *Id*. Based on a conflict of authority, the district court certified its decision for interlocutory appeal. *Id*. The Court of Appeals reversed and remanded the case for dismissal, holding as follows:

> We hold that a claim challenging a regulator-approved rate is subject to the filed rate doctrine ***whether or not the rate is passed through an intermediary***. The claim is therefore barred if it would undermine the regulator's rate-setting authority or operate to give the suing ratepayer a preferential rate. Applying this analysis, we conclude that Plaintiffs' claims are barred and, accordingly, reverse and remand for dismissal of the case.

*Id*. (emphasis added).

As in *Rothstein*, where it was "undisputed that Balboa's LPI rates were filed with regulators and that Plaintiffs were billed at those same rates by GMAC," *id*. at 262, it is undisputed here that ASIC's rates were filed with Florida's insurance regulators and that plaintiffs were billed at those same rates. Voyles Dec. ¶¶ 4-5 & Ex. A thereto; Wilson Dec. ¶¶ 11-20. As in *Rothstein*, the theory of plaintiffs' claims is that plaintiffs were "overbilled when they were charged the full LPI rates (which were approved by regulators), instead of lower rates net of the value of ['kickbacks']." 794 F.3d at 262. "That theory can succeed only if the arrangement [concerning the alleged 'kickbacks'] should have been treated as part and parcel of

7

the LPI transaction and *reflected in the LPI rates*.  But, under the nonjusticiability principle, it is squarely for the regulators to say what should or should not be included in a filed rate."  *Id*. (citation omitted; italics in original). Moreover, "[a]ny damages recovered by … [plaintiffs] would operate 'like a rebate ... to give [them] a preference' over other borrowers who were charged for LPI."  *Id*. at 263 (citation omitted). "While non-suing borrowers serviced by [BB&T] would be billed at the filed LPI rates, [plaintiffs] would enjoy the discount that [ASIC] allegedly provided to [BB&T].  The problem is not obviated simply because [plaintiffs] have brought their claims on behalf of a putative class."  *Id*. (citations omitted).  Thus, plaintiffs' claims offend both the nonjusticiability and nondiscrimination principles of the filed rate doctrine, and all of plaintiffs' "inflated premium" claims against ASIC are barred.  *See id.* at 262.

Similarly, in *Uniforce*, the plaintiffs complained they had been forced to pay excessive premiums for worker's compensation insurance due to the "concerted" actions of the defendants. 892 F. Supp. at 1507.  The Court found those allegations presented "an especially compelling case for the application of the [filed-rate] doctrine" because they challenged the filed rates and the relief they sought would require the Court to step into the reserved rate-making sphere of the regulatory agency.  *Id*. at 1512.  The Court dismissed plaintiffs' claims, explaining that:

> In order for this Court or a jury to award damages, it would be necessary to measure the difference between the properly approved workers' compensation insurance rates paid by plaintiffs and those mythical rates which would have been applicable but for the defendants' concerted activity. This undertaking is not within the province of the courts but should reside with the respective state regulators with authority over rate-setting.

*Id*.

And, in *Morales*, the plaintiffs sued their title insurance companies alleging that they paid "grossly overpriced" premiums because the companies paid "fees, kickbacks, and/or other things of value" to their agents that were "not commensurate with the services actually performed by those agents."  983 F. Supp. at 1422, 1429.  This Court dismissed the claims because "the filed

rate doctrine recognizes that where a legislature has established a scheme for utility rate-making, the rights of the rate-payer in regard to the rate he pays are defined by that scheme." *Id*. at 1426 (quoting *Taffet*, 967 F.2d at 1490).

This Court rejected the *Morales* plaintiffs' attempt to evade the filed-rate doctrine by contending that their Complaint did not assert "any right to a reasonable rate for title insurance," and did not seek damages "measured by the difference between the actual rate and a hypothetical 'reasonable' rate." *Id*. Focusing on the allegations of "grossly overpriced title insurance premiums," the Court correctly concluded that "the plaintiffs' claims are nothing more than a challenge to Florida's rate structure," and the alleged injury was "[p]aying 'grossly overpriced title insurance premiums.'" *Id*. at 1429.  The Court concluded: "However, because they have no legal right to pay anything other than the promulgated rates, they have suffered no cognizable injury by virtue of paying said rates." *Id*. (citing *Taffet*, 967 F.2d at 1494).   And, because plaintiffs had suffered no injury by paying the filed rate, they lacked Article III standing. *Id*.

The Complaint alleges throughout that plaintiffs were injured by paying those portions of the premium that allegedly are attributable to commissions and other purported cost components. Compl. ¶¶ 22 (alleging that Defendants "artificially inflate the amounts they charge to borrowers for FPI 'premiums'"); 25 ("Insurance is automatically placed on the property and the inflated amounts are charged to the borrower."); 38 ("Borrowers … are charged hyperinflated and illegitimate noncompetitive amounts for force-placed insurance.  These charges are inflated to include undisclosed kickbacks[.]").  Plaintiffs' attack on the components of their LPI premium (the "kickbacks") is a direct attack on their premium. *See, e.g., Rothstein*, 794 F.3d at 263 ("whether insurer-provided services should have been reflected in the calculation of LPI is not for us to say; under the nonjusticiability principle, the question is reserved exclusively to the regulators"); *Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 417 (S.D.N.Y. 2009), *aff'd*, 379 F.

App'x 30 (2d Cir. 2010); *Morales*, 983 F. Supp. at 1429; *Uniforce*, 892 F. Supp. at 1512; *Clark v. Prudential Ins. Co. of Am.*, 736 F. Supp. 2d 902, 919-20 (D.N.J. 2010) (filed-rate doctrine bars "any remedy requiring a refund of a portion of the filed rate") (internal quotation marks and citation omitted).

To award damages to plaintiffs, it would be necessary to measure the difference between the approved premium rates that were charged and some "mythical rate" which would have been applicable but for ASIC's alleged conduct. *See, e.g., Uniforce*, 892 F. Supp. at 1512. The Court or jury would thereby be stepping into the reserved rate-making sphere of the Florida insurance regulators. "This undertaking is not within the province of the courts." *Id*. Indeed, Florida law forbids ASIC from charging anything less than the filed rate. *See* Fla. Stat. § 626.9541(1)(o)2 (barring insurers from charging or collecting premium less than rate filed with the OIR).

Plaintiffs' damages claims demand that the commissions and other administrative costs be subtracted from their LPI premium and that they be charged some lesser amount than approved by the Florida regulators. But the only way to quantify this harm would require this Court to make a determination of what the rate should be absent the alleged violations and to order a refund of a portion of the approved premium — the very tasks and relief that would violate both strands of the filed-rate doctrine: By engaging in retroactive rate-setting, the Court would violate the nonjusticiability strand; and by providing relief to the plaintiffs, but not to other ASIC LPI insureds who are not included within this action, it would violate the nondiscrimination strand. *See Rothstein*, 794 F.3d at 261 (LPI filed rate approved by the governing regulatory agency "is per se reasonable and unassailable in judicial proceedings brought by ratepayers") (quoting *Wegoland*, 27 F.3d at 18). As explained by *Decambaliza*, which dismissed identical LPI claims based on supposed "kickbacks":

> [A]lleged kickbacks in this case are a part of a premium that was approved by a regulatory entity. Allowing plaintiff to challenge them would contravene the non-

> justiciability and non-discrimination purposes of the filed rate doctrine.  In order
> to calculate the amount of the alleged kickbacks, it would be necessary for this
> court to determine a reasonable rate and subtract it from the premium.…
> Plaintiff's challenges should be addressed by the Wisconsin Commissioner of
> Insurance, who is responsible for making sure that insurers do not earn
> unreasonably high profits in relation to the risk of loss or claim unreasonably high
> expenses in relation to the services they provide.

2013 WL 5777294, at *7-8. Plaintiffs paid nothing more than the approved premium.

Accordingly, all claims against ASIC based on the allegation that plaintiffs were charged an

"excess" or "inflated" premium are barred by the filed rate doctrine and should be dismissed

with prejudice.

## II.   PLAINTIFFS' "EXCESS" PREMIUM CLAIMS AGAINST ASIC ARE BARRED BY THEIR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES UNDER FLORIDA LAW

The Complaint challenges the amount of plaintiffs' LPI premium, claiming that they paid

"excessive," "inflated," "unnecessary," and "exorbitant" LPI premiums, and that components of

the approved premium, such as commissions and other purported cost components, were

improperly charged to them.  *See, e.g.*, Compl. ¶¶ 4, 22, 25, 30, 32, 37-38, 40, 67, 78, 80, 94, 96-

97.  "A 'premium' is 'the consideration paid or to be paid to an insurer for the issuance ... of any

... policy of insurance.'"  *Serchay v. State Farm Fla. Ins. Co.*, 25 So. 3d 652, 654 (Fla. 4th DCA

2010) (quoting § 627.041(2), Fla. Stat. (2007)).  "A 'rate' is 'the unit charge by which the

measure of exposure or the amount of insurance specified in a policy of insurance ... is

multiplied to determine the premium.'"  *Id.* (quoting § 627.041(1), Fla. Stat. (2007)).  "Put in

mathematical terms: Amount of insurance x Rate = Premium."  *Id.*  Thus, plaintiffs' challenge to

their LPI premiums is a challenge to the filed and approved premium rates.

Florida law provides an administrative remedy to "[a]ny person aggrieved by any

[premium] rate charged … by an insurer."  Fla. Stat. § 627.371; *Asseff v. Citizens Prop. Ins.*, 159

So. 3d 327, 332-333 (Fla. 1st DCA 2015).  And Florida courts have uniformly held that an

insured must exhaust the administrative remedies afforded by § 627.371 before filing a suit that challenges an insurance premium. *See Asseff*, 159 So. 3d 327; *Serchay*, 25 So. 3d 653; *FCCI Ins. Co. v. NCM of Collier County, Inc.*, 15 So. 3d 5, 7-8 (Fla. 2d DCA 2009); *Progressive Express Ins. Co. v. Reaume,* 937 So. 2d 1120, 1122 (Fla. 2d DCA 2006); *State Farm Mut. Auto. v. Gibbons*, 860 So. 2d 1050, 1052 (Fla. 5th DCA 2003); *see also Int'l Patrol & Detective Agency, Co. v. Aetna Cas. & Sur. Co.*, 396 So. 2d 774, 776 (Fla. 1st DCA 1981), *approved and adopted by*, 419 So. 2d 323, 324 (Fla. 1982). The failure to exhaust the remedy afforded by § 627.371 necessitates dismissal of the action. *Asseff*, 159 So. 2d at 329-34; *Serchay*, 25 So. 3d at 654; *Reaume*, 937 So. 2d at 1123; *Gibbons*, 860 So. 2d at 1052; *Continental Cas. Co. v. First Fin. Employee Leasing, Inc.*, 716 F. Supp. 2d 1176, 1178-79 (M.D. Fla. 2010). Sitting in diversity, this Court is required to apply Florida law to plaintiffs' claims, which arise from the placement of insurance on plaintiffs' property located in Florida. Compl. ¶¶ 12, 41 & Ex. A; *Erie RR. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Furthermore, plaintiffs' challenge to components of their LPI premiums, such as commissions and other purported cost factors, unquestionably implicates express elements of Florida's insurance rate statutes that the OIR is required to consider in deciding whether to approve a proposed rate. For example, plaintiffs complain that commission costs were included in their premium. Compl. ¶¶ 22, 66, 80. But Fla. Stat. § 627.062(2)(b)2 expressly requires the OIR to consider "[p]ast and prospective expenses" in reviewing a proposed rate, and § 627.062(2)(i)1 states that the OIR "may not directly or indirectly … [p]rohibit any insurer from paying acquisition costs [i.e., commissions] … or prohibit any such insurer from including the full amount of the acquisition costs in a rate filing." The OIR must also consider the "degree of competition among insurers for the risk insured," § 627.062(b)3, which relates to plaintiffs' allegation that "two major insurance companies … control virtually the entire market for force-

placed insurance." Compl. ¶ 7. The statutes also require the OIR to consider a "reasonable margin for underwriting profit and contingencies," § 627.062(b)13, which addresses plaintiffs' allegations concerning ASIC's "profits" relating to LPI.  Compl. ¶¶ 2, 4, 6, 30, 32, 38.  Indeed, because plaintiffs only paid an LPI premium, and nothing more, their claims concerning the alleged provision of below cost services, such as insurance tracking services and kickbacks or unearned commissions, Compl. ¶ 46, 87, are actionable only to the extent they paid or were charged for such alleged services as part of their premium.

Florida courts have consistently dismissed actions in analogous situations.  In *Asseff*, the plaintiffs claimed their insurer improperly denied them loss mitigation credits which would have reduced the premium they paid for their homeowners' insurance.  159 So. 3d at 328.  The plaintiffs alleged that Florida law required insurers to provide credits or discounts from their homeowners' premiums when the insureds implemented windstorm damage mitigation devices or techniques to reduce windstorm losses.  *Id*.  "The [trial] court found that the injury [plaintiffs] complained of was the reduction of wind mitigation credits and the corresponding increase in premiums they and others were required to pay … for homeowners coverage." *Id*.  at 329.  The trial court dismissed the action on the ground that the plaintiffs had not exhausted their remedies under Fla. Stat. § 627.371.  *Id*.  Florida's First District Court of Appeals affirmed the dismissal of the *Asseff* action.  *Id*. at 330-334.

Likewise, in *Serchay*, the plaintiffs directly challenged their homeowners' premiums, claiming that they were entitled to recover the discounts from the premiums they should have received for the loss mitigation features of their home. 25 So. 3d at 653.  The trial court dismissed the complaint because the plaintiffs had failed to exhaust their remedies under Fla. Stat. § 627.371.  *Id*. at 654.  Florida's Fourth District Court of Appeals affirmed the trial court's dismissal, holding that a premium discount is "inextricably linked to the rate charged and,

therefore, section 627.371 applies to the plaintiff's action." *Id.*   The Fourth District added:

"[U]nder section 627.371's plain language, a request for a 'premium adjustment' necessarily

must arise from a challenge to the 'rate charged.'"   *Id.*[3]

Under the above authorities, it is clear that plaintiffs' claim for a recovery of components

of their LPI premium must be addressed by the OIR under § 627.371.   The Complaint does not

allege that plaintiffs exhausted the remedies provided to them by the Florida Insurance Code and,

accordingly, all of plaintiffs' "inflated" premium claims against ASIC should be dismissed.

## III.   PLAINTIFFS' CLAIMS ARE BARRED BY CONTROLLING AUTHORITY

Plaintiffs' contention that their LPI premiums were "inflated" due to the alleged inclusion

of "kickbacks," see Compl. ¶¶ 22, 30, 38, 78, is barred by controlling authority.   In *Feaz v. Wells*

*Fargo Bank, N.A.*, a similar claim was rejected by the Eleventh Circuit:

> The allegations that Wells Fargo violated its fiduciary duty and committed
> fraud by charging Feaz a commission, a "kickback," or "other compensation"—
> any amount above the net cost to Wells Fargo of obtaining the force-placed flood
> insurance—also fails … because Wells Fargo disclosed that Feaz would incur
> higher costs if it force-placed the insurance for her. We agree with the Seventh
> Circuit that "simply calling a commission a kickback doesn't make it one. The
> defining characteristic of a kickback is divided loyalties. But [the lender] was not
> acting on behalf of [the borrower] or representing her interests. The loan
> agreement makes it clear that the insurance requirement is for the lender's
> protection." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 611 (7th Cir. 2013).

745 F.3d 1110-1111 (11th Cir. 2014).

The same analysis applies here. The Complaint admits that plaintiffs were obligated

---

[3] *See also FCCI Ins. Co.*, 15 So. 3d at 6 ("[a] party challenging the good faith calculation
of retrospective workers' compensation premiums must pursue such a challenge in an
administrative forum"); *Reaume*, 937 So. 2d at 1123 (insured alleging that her insurer charged an
excessive premium rate by including an excessive premium finance charge was required to first
seek relief from the OIR under § 627.371); *Gibbons*, 860 So. 2d at 1052 (exclusive remedy for
insured alleging that her insurer charged an excessive rate by considering monies paid on bad
faith and punitive damage claims when determining rates was administrative review under
section 627.371); *Int'l Patrol*, 396 So. 2d at 775-76 (insured alleging that its insurers charged
excessive rates by failing to consider investment income when determining rates had adequate
administrative remedy under section 627.371 and was barred from bringing suit in court).

under their mortgage to maintain hazard insurance at all times, and that, if they failed to maintain adequate insurance, BB&T had the right to obtain the insurance and pass the costs to plaintiffs. Complaint ¶ 43; Mortgage [ECF 1-1] ¶ 5.  It was fully disclosed to plaintiffs in writing that the cost of any such LPI placement "may be much higher than the amount [plaintiffs] would normally pay," and may include compensation to the lender or an affiliate of the lender.  Wilson Dec., Ex. C.  As in *Feaz*, it was disclosed to plaintiffs that, in placing LPI, their lender was not acting on plaintiffs' behalf, but was protecting its own interests, and that plaintiffs would incur "much higher" costs if their lender purchased LPI for the mortgaged property than if plaintiffs obtained the insurance themselves.  Maintaining property insurance was plaintiffs' contractual obligation, which they failed to fulfill; because the consequences of that failure and the LPI placement were clearly disclosed to plaintiffs, the claims against ASIC relating to "kickbacks" or "inflated premiums" are barred, and should be dismissed with prejudice.  *Feaz*, 745 F.3d at 1110-11.

## IV.    THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

"There are three elements of an unjust enrichment claim under Florida law: first, the plaintiff has conferred a benefit on the defendant; second, the defendant voluntarily accepted and retained that benefit; and, finally, the circumstances are such that it would be inequitable for the defendants to retain the benefit without paying for it." *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1287 (11th Cir. 2015) (citations omitted).  An unjust enrichment claim fails as a matter of law where an express contract governs the dispute. *Validsa, Inc. v. PDVSA Servs., Inc.*, 424 F. App'x 862, 873 (11th Cir. 2011) (holding that an unjust enrichment claim "fail[s] on the showing of an express contract"); *see also Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008).  An unjust enrichment claim also fails where the plaintiff did not confer a direct benefit on the defendant. *See City of Miami*, 800 F.3d at 1287 ("As for the

first element [of an unjust enrichment claim], the benefit must be conferred directly from the plaintiff to the defendant.") (citation omitted); *see also Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913, *5-6 (S.D. Fla. Jan. 10, 2013) (citing *Virgilio v. Ryland Grp.*, 680 F.3d 1329, 1337 (11th Cir. 2012)).

Plaintiffs' unjust enrichment claim fails because it is barred by the existence of a written insurance contract covering the property (Complaint ¶ 86), as well as a Mortgage that governs the maintenance of insurance on the property.  *See, e.g.* Compl. ¶¶ 3, 21-22, 42-43, 63-67, 72-73, 94-97 & Mortgage [ECF 1-1] ¶ 5.  Plaintiffs' Mortgage and LPI policy govern the dispute concerning the LPI placement and the LPI premiums, and defeat the unjust enrichment claim as a matter of law.  *Validsa*, 424 F. App'x at 873; *Diamond "S"*, 989 So. 2d at 697.

Separately, the unjust enrichment claim fails because the Complaint does not allege any facts showing a direct benefit or payment by plaintiffs to ASIC of the premium, or the challenged premium components, such as commissions. The Complaint instead alleges that BB&T obtained and paid for the LPI premium, and that commissions and other "kickbacks" were paid by ASIC to BB&T.  *See, e.g.*, Compl. ¶¶ 2, 21, 27-29, 44, 65, 88, 96.  Plaintiffs' unjust enrichment claim fails for lack of a direct benefit from the plaintiff to ASIC.  *See City of Miami*, 800 F.3d at 1289 (affirming dismissal of unjust enrichment claim because the alleged benefits "were not directly conferred on [defendant], as is required for an unjust enrichment claim under Florida law"); *see also Kunzelmann*, 2013 WL 139913, at *6 (holding that the unjust enrichment claim in LPI case fails because "commission … [was] not paid to [servicer] by the plaintiff[], but instead the insurance company pays it").

Lastly, the unjust enrichment claim fails because the Complaint does not allege any facts showing that it would be inequitable for ASIC to retain the premiums for the coverage it provided for plaintiffs' property.  Plaintiffs' Mortgage makes clear that insurance must be

maintained on their property and that BB&T is permitted to place insurance on the property if plaintiffs fail to maintain appropriate insurance.  *See* Mortgage ¶ 5; *see also* Compl. ¶ 3 ("Under the typical mortgage agreement, if the insurance policy lapses or provides insufficient coverage, the lender has the right to 'force place' a new policy on the property and then charge the premiums to the borrower.").  ASIC issued the LPI after plaintiffs failed to maintain the required insurance, and in exchange received from BB&T the exact premium authorized by rates filed with and approved by the Florida OIR.  There is nothing inequitable about ASIC receiving a lawful premium in exchange for providing insurance coverage.[4]

## V.      THE TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED

Under Florida law, "the elements of tortious interference with a contractual relationship are: '(1) The existence of a contract, (2) The defendant's knowledge of the contract, (3) The defendant's intentional procurement of the contract's breach, (4) Absence of any justification or privilege, (5) Damages resulting from the breach.'" *Banks Hardwoods Fla., LLC v. Maderas Iglesias, S.A.*, 2009 WL 3446736, at *1 (S.D. Fla. Oct. 20, 2009) (citation omitted).[5]  Plaintiffs' tortious interference claim against ASIC is based on the allegation that plaintiffs and class members have "business and contractual relationships" with BB&T and that ASIC interfered with these relationships, causing plaintiffs' indebtedness to increase due to "bad faith, exorbitant,

---

[4] Indeed, Florida law bars ASIC from charging any lesser premium.  *See* Fla. Stat. § 626.9541(1)(o)2.

[5] Under Florida law, interference with a business relationship and with a contract form "a single claim because the prima facie showing for intentional interference with contractual relationships and intentional interference with business relationships are, in substance, the same." *In re Pearlman*, 2010 WL 3431825, at *1 (M.D. Fla. Aug. 27, 2010) (collecting cases).  Though Count V is styled "Tortious Interference With a Business Relationship," the allegations center on ASIC's alleged interference with a "*contractual*" relationship."  *See* Compl. ¶¶ 94-95 (emphasis added).  Moreover, "[a]s a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Bell v. Tampa Bay Downs, Inc.*, 2011 WL 6718266, at *1 (M.D. Fla. Dec. 21, 2011).  Plaintiffs do not allege that their mortgage contract was not "completed."

and illegal charges" for force-placed insurance.  Compl. ¶ 97.  However, the premiums charged for the ASIC LPI were based on rates approved by the Florida OIR, and plaintiffs fail to identify any provision of the Mortgage that would preclude BB&T from purchasing insurance at a lawfully approved rate.  Plaintiffs' failure to allege facts showing that ASIC procured a breach of their Mortgage is fatal to the tortious interference claim.

Plaintiffs' claim also fails because ASIC's conduct was justified and privileged.  *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998) ("Florida law recognizes the principle that actions taken to safeguard or protect one's financial interest, so long as improper means are not employed, are privileged.").  Plaintiffs allege that ASIC's conduct was based upon an exclusive relationship to provide BB&T compensation in the form of kickbacks, unearned commissions and reimbursements in exchange for the right to provide LPI for properties serviced by BB&T.  Compl. ¶ 96.  Plaintiffs' allegations establish that ASIC's conduct was directed at protecting its own financial and business interests under its agreement with BB&T.  To overcome ASIC's privilege, plaintiffs must allege facts which, if true, would establish improper conduct on ASIC's part that was inconsistent with protecting its own economic interests.  *See Maib v. FDIC*, 771 F. Supp. 2d 14, 19 (D.D.C. 2011) (applying Florida law and dismissing tortious interference with business relations claim).  "Improper interference" is defined as including "physical violence, misrepresentations, illegal conduct or threats of illegal conduct."  *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1340 (S.D. Fla. 2007) (citation omitted).  The Complaint fails to allege any facts sufficient to overcome ASIC's privilege, and the tortious interference claim should be dismissed.

## CONCLUSION

For the reasons stated herein, ASIC respectfully requests that the Court grant this Motion and dismiss all claims against ASIC with prejudice.

Respectfully submitted

By:   -/s/- *Frank Burt*
_____
FRANK BURT (Fla. Bar No. 197963)
Email:  fburt@cfjblaw.com
FARROKH JHABVALA (Fla. Bar No. 765155)
Email:  fjhabvala@cfjblaw.com
LANDON K. CLAYMAN (Fla. Bar No. 283576)
Email:  lclayman@cfjblaw.com
CARLTON FIELDS JORDEN BURT, P.A.
Miami Tower, Suite 4200
100 S.E. Second Street
Miami, Florida  33131-2113
Telephone:  (305) 530-0050
Facsimile:   (305) 530-0055

*Attorneys for AMERICAN SECURITY*
*INSURANCE COMPANY*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Motion of American Security Insurance Company to Dismiss the Class Action Complaint with Prejudice with Supporting Memorandum of Law was filed on November 2, 2015 with the Clerk by using the CM/ECF system, which system served all counsel of record.


-/s/- *Frank Burt*
Frank Burt

**SERVICE LIST**
*Beber, et al. v. Branch Banking & Trust Co., and*
*American Security Insurance Company*
Case No. 15-23294-CIV-KMW

Roosevelt N. Nesmith, Esq.
rooseveltNEF@nesmithlaw.com
**Law Offices Roosevelt N. Nesmith, LLC**
363 Bloomfield Avenue
Suite 2C
Montclair, NJ 07042
Telephone:  973 259-6990

*Counsel for Plaintiffs*

Howard Mitchell Bushman, Esq.
hbushman@harkeclasby.com
Lance August Harke, Esq.
lharke@harkeclasby.com
Sarah Clasby Engel, Esq.
sengel@harkeclasby.com
**Harke Clasby & Bushman LLP**
9699 NE Second Avenue
Miami Shores, FL 33138
Telephone: 305-536-8220
Facsimile:  305-536-8229

*Counsel for Plaintiffs*

David Stockton Hendrix, Esq.
david.hendrix@gray-robinson.com
**Gray Robinson, PA**
401 East Jackson Street
Suite 2700
Tampa, FL 33602
Telephone:  813-273-5000
Facsimile:   813 273-5145

*Counsel for Branch Banking & Trust Co.*

Archie Cleveland Lamb, Jr., Esq.
alamb@archielamb.com
**Archie Lamb, Associates**
P.O. Box 2088
Birmingham, AL  35201
Telephone: 205-612-6789
Facsimile:  205-314-0785

*Counsel for Plaintiffs*

Robert J. Neary, Esq.
rn@kttlaw.com
Thomas A. Tucker Ronzetti, Esq.
tr@kttlaw.com
Adam M. Moskowitz, Esq.
amm@kttlaw.com
Rachel Sullivan, Esq.
rs@kttlaw.com
**Kozyak Tropin & Throckmorton, P.A.**
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, FL 33134
Telephone: 305-372-1800
Facsimile:  305-372-3508

*Counsel for Plaintiffs*

Robyn C. Quattrone, Esq.
rquattrone@buckleysandler.com
Stephen M. LeBlanc, Esq.
sleblanc@buckleysandler.com
**BuckleySandler, LLP**
1250 24th Street, NW, Suite 700
Washington, DC 20037
Telephone:  202-349-8035

*Counsel for Branch Banking & Trust Co.*

102110875.2